IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JORGE TORRES-LARANEGA,**

    Petitioner,

                                                         No. CV 08-889 MV/WDS

**v.**                                                         CR 03-2112 MV

**UNITED STATES OF AMERICA,**

    Respondent.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) Petitioner Jorge Torres-Laranega's *Notice of Appeal*, filed August 26, 2009 (Doc. 32), from an Order issued on July 27, 2009 (Doc. 31) by Magistrate Judge William D. Schneider that grants reconsideration of Judge Schneider's May 21, 2009 Order (Doc. 19) and denies Torres-Laranega's requests for discovery regarding his petition for relief made under 28 U.S.C. § 2255; on (ii) Respondent United States of America's *Motion to Dismiss Torres-Laranega's Objections*, filed September 9, 2009 (Doc. 35); and on Torres-Laranega's *Letter*, filed Nov. 20, 2009 (Doc. 39)[1]; his *Motion to Continue Time to Reply*, filed Aug. 28, 2009) (Doc. 33); and his *Motion to Continue and Status of Case*, filed March 18, 2010 (Doc. 42), requesting the Court to order his trial counsel to supply him with the grand-jury transcripts and other Rule 16 discovery that she obtained during his criminal trial and requesting rulings and an extension of time in which to reply until he receives requested materials.

---

[1] Torres-Laranega is instructed that "a request for a court order must be made by motion" filed in the record and meeting the procedural requirements, *see* FED. R. CIV. P. 7(b), and not just by writing a letter to a judge. The United States has responded to Torres-Laranega's request and I will consider it.

The Court will deny the motion to dismiss.  But because (i) the record shows that Torres-Laranega already has in his possession the specific grand-jury testimony that is related to his ineffective-assistance-of-counsel claim involving Agent Armijo and he has access to the wire-tap recordings he seeks; (ii) he cannot show that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;" and (iii) extensive trial evidence implicated him in acts undertaken in New Mexico in furtherance of the conspiracy and the continuing criminal enterprise apart from any wiretap evidence; he cannot show that the denial of his request for discovery is contrary to law, and I will affirm the Order denying discovery.  Further, I will order the United States to serve Torres-Laranega with all future documents it files, and with all Orders of the Court, including this Order, by certified mail, return receipt requested, and I will order his former trial/appellate counsel to turn over his file to him.

I.     **Procedural Background**

> Jorge Torres-Laranega was the leader of a rather brazen drug-trafficking ring that transported multi-ton quantities of marijuana in tractor trailers from the southwestern United States to the Chicago area.  Despite four government seizures of Mr. Torres-Laranega's tractor trailers in a four month period (the result of a federal informant working within his operation), Mr. Torres-Laranega was actively planning yet another drug shipment when the government arrested him and his confederates.  Following a jury trial, Mr. Torres-Laranega was convicted for engaging in a continuing criminal enterprise ("CCE") under the "drug kingpin" statute, as well as for possession with intent to distribute 1,000 kilograms or more of marijuana.

*United States v. Torres-Laranega*, 476 F.3d 1148, 1149 (10th Cir. 2007).

> [T]he indictment specifically charged that the violations of law constituting the continuing criminal enterprise included:
>
> (i) possession of marijuana with an intent to distribute;
>
> (ii) from June 8, 2002 through November 19, 2003, conspiring to possess marijuana with an intent to distribute; and

> (iii) possession with intent to distribute the marijuana found in each of the four tractor trailers seized by the government.

*Id.* at 1158. "Torres-Laranega was sentenced to 240 months in prison, the statutory minimum for a CCE conviction." *Id.* at 1154. I "subsequently vacated the jury's verdict on the conspiracy count on the ground that it is a lesser included offense of a CCE conviction." *Id.* at n.2. I "also sentenced Mr. Torres-Laranega to 120 months for his possession with intent to distribute conviction, but ordered this sentence to run concurrently with his CCE sentence." *Id.* at n.3.

> Torres-Laranega directly appealed two issues,
>
> both seeking reversal of his CCE conviction. First, he asserts that the district court's jury instructions improperly lowered the government's burden of proof on the "substantial income" element of the CCE charge. Second, he contends insufficient evidence exists to suggest that he personally obtained substantial income or resources from the enterprise.

*Id.* at 1149. The Tenth Circuit affirmed, holding, on the first issue, that

> the district court's challenged language permitted the government to prove its case based on two inferences: first, that an organization that deals drugs in large volumes is likely to have "substantial" income or resources to bestow on its participants, and, second, that a person who holds a high-level position within such an organization likely obtains a significant share of the organization's income or resources. Both of these propositions seem to us entirely faithful to the statutory language and common sense.

*Id.* at 1156. As to the challenge to the sufficiency of the evidence, the Tenth Circuit held that

> the jury had before it ample evidence that Mr. Torres-Laranega obtained substantial income or resources from the conduct charged in the indictment. For example, the jury received evidence of four separate inchoate transactions in which the government seized almost 5,000 kilograms worth of marijuana from Mr. Torres-Laranega's enterprise. Evidence was also presented to the jury that, pursuant to the conspiracy charged as part of the continuing criminal enterprise, Mr. Torres-Laranega acquired for distribution vast quantities of marijuana through drug couriers traveling into the United States from Mexico. The jury was free to infer that the 5,000 kilograms of drugs seized by the government were obtained by Mr. Torres-Laranega in this manner and, thus, that Mr. Torres-Laranega "obtained,"

> "gained" or "attained" substantial resources through a violation charged in the indictment as part of the continuing criminal enterprise.
>
> The jury also received evidence of at least three successful drug runs made by the enterprise during the course of the conspiracy alleged as part of the continuing series of violations. Twice Ms. Alarcon observed large quantities of marijuana depart from Las Cruces bound for Chicago. There was also evidence that in early July of 2003, Mr. Barraza and his brother successfully delivered a load of marijuana in a commercial tractor trailer to Chicago on behalf of Mr. Torres-Laranega. This is more than sufficient as a matter of law; indeed, evidence of substantial income resulting from a single significant successful transaction in a series of violations can, standing alone, satisfy the CCE statute.
>
> In addition, Ms. Alarcon testified that the going rate for driving tractor trailers full of marijuana for Mr. Torres-Laranega during the course of the conspiracy was $13,000-$20,000 per delivery. Mr. Torres-Laranega did in fact pay Ms. Alarcon, Mr. Mendivil, Mr. Barraza and others, thousands of dollars for driving trucks and related transportation expenses. Mr. Torres-Laranega further promised bonuses of $20,000 to Mr. Fernandez and another co-conspirator if the police did not seize a tractor trailer full of marijuana. Still further evidence suggested that Mr. Torres-Laranega owned at least two tractor trailers involved in the trafficking. And, of course, Mr. Torres-Laranega paid for the legal bills of Mr. Mendivil when he was arrested while transporting marijuana, as well as the costs associated with efforts to retrieve seized tractor trailers from law enforcement authorities. We have previously held that evidence of such significant expenditures by a defendant in connection with his or her drug operation supplies a sufficient basis for a jury to infer the defendant's receipt of substantial income or resources from a drug enterprise.

*Id.* at 1159-60 (citations omitted).

Torres-Laranega filed a timely § 2255 petition on September 26, 2008, alleging ineffective assistance of counsel at trial. *See* Doc. 1. On April 9, 2009, Torres-Laranega filed a motion for discovery of all of the grand-jury minutes and the Spanish transcripts of wiretapped phone calls. *See* Doc. 17. Judge Schneider initially granted Torres-Laranega's Discovery Motion without analysis, deeming it unopposed because the United States had not filed a response to the motion. *See* Doc. 19. On June 2, 2009, however, the United States filed a motion for reconsideration, which Judge Schneider granted. *See* Doc. 31. Torres-Laranega appeals from this Order.

## II. ANALYSIS

### A. I will deny the Government's motion to dismiss the appeal.

The Government urges dismissal of Torres-Laranega's appeal from Judge Schneider's discovery Order, contending that his objections should not be entertained until after Judge Schneider files a Report and Recommendation for the ultimate disposition of Torres-Laranega's petition for relief under § 2255, and citing a 1991 case from the Central District of California. *See* Doc. 35 at 2 (citing *Magee v. Rowland,* 764 F. Supp. 1375 (C.D. Cal. 1991)). In *Magee*, the district-court judge refused to review an interim discovery order issued by the magistrate judge in a habeas case, stating, "such micro-oversight of § 636(b)(1)(B) proceedings was not intended by Congress. It is sufficient and in keeping with the purpose of the Act that all interim rulings of the magistrate judge are subject to review when he or she files the proposed findings and recommendations." *Id.* at 1377.

The record in this case, however, reflects that no order of reference requesting Judge Schneider to conduct hearings and file proposed findings of fact and conclusions of law on the § 2255 petition has yet been filed. *See* 28 U.S.C. § 2255 R. 8(b) (permitting me, under 28 U.S.C. § 636(b), to refer a rule 2255 "motion to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition"). Judge Schneider's discovery ruling, therefore, was issued pursuant to his authority under § 636(b)(1)(A) and § 2255 R. 10 and is procedurally distinguishable from *Magee*. I may statutorily "reconsider any pretrial matter" for which a nondispositive order has been entered "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." § 636(b)(1)(A).

Further, I disagree with *Magee's* broad statement that reviewing any discovery order when a case has been referred to a magistrate judge for a proposed disposition is a waste of time or

5

constitutes "micro-oversight."  The issue of discovery may be critical to a petitioner's underlying request for relief, and it would not be judicially economical to wait until after a report and recommendation has been issued – without the benefit of the requested discovery – to reconsider the discovery ruling because the ultimate analysis may change if discovery was, in fact, merited.  I will deny the motion to dismiss the appeal.

### B.     The discovery order is not clearly erroneous or contrary to law.

The basis of Torres-Laranega's request for discovery is two-fold.  First, he contends that, if he had a copy of the grand-jury transcripts, he could establish that agent "Andrew Armijo presented a perjuried testimony to the Grand Jury in obtaining the Indictment" when he testified on August 19, 2003.  Doc. 17 at 3-4.  In support of his argument, Torres-Laranega asserts that Armijo testified at Torres-Laranega's criminal trial that he told the Grand Jury that "he saw Mr. Torres-Laranega in the chase car on May 18, 2003 in Las Cruces, New Mexico that was following the Truck Trailer driven by Mr. Martin Mendivil." *Id.* at 9.  He states, however, that Agent Armijo also testified at his criminal trial that the information he gave the Grand Jury about Torres-Laranega allegedly being in the chase car was supplied to him by the confidential informant, Yolanda Alarcon. *Id.*  He contends that, therefore, the grand-jury transcript will show that Agent Armijo lied to the Grand Jury by stating that he saw Torres-Laranega, and that, because of this perjured testimony, all of the indictments, including the superceding indictments, were invalid and should have been dismissed.  In ground four of his habeas petition, Torres-Larenaga contends that his trial counsel was ineffective because she should have moved for a mistrial and dismissal of the indictments when she discovered Agent Armijo's allegedly perjured testimony.  *See* Doc. 1 at 9.

He further contends that, without this allegedly perjured testimony regarding his alleged presence in New Mexico when the May 18, 2003 marijuana seizure took place – and which, he contends, was the "only link" associating him with New Mexico, the Government could not have prosecuted him in New Mexico for CCE, conspiracy, or possession of marijuana. *See* Doc. 17 at 3-5. The following standard applies in deciding whether to require disclosure of grand-jury transcripts:

> [T]he decision on whether to disclose grand jury materials to defendant's counsel is left to the trial court on a showing by defendant "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed.R.Crim.P. 6(e)(3)(E)(ii). In considering the issue of grand jury disclosure, we have explained:
>
>> [t]he prerequisites for disclosure of grand jury materials are demanding. Specifically, a party seeking grand jury materials must show (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed. Relevance alone is not sufficient; secrecy will not be broken absent a compelling necessity for the materials. Further, the request must amount to more than a request for authorization to engage in a fishing expedition.
>
> *In re Grand Jury 95-1*, 118 F.3d at 1437 (quotation marks and citations omitted). Rather than a general request, the Supreme Court has consistently held a defendant must make a strong showing of a "particularized need" before grand jury materials are disclosed. *See United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984) (quotation marks and citations omitted). Thus, "[t]he rule governing disclosure of grand jury testimony is not to be used as a substitute for general discovery," *In re Lynde*, 922 F.2d 1448, 1453-54 (10th Cir.1991) (quotation marks and citation omitted), nor as a means to reveal exculpatory evidence, *see United States v. Rising*, 867 F.2d 1255, 1260 (10th Cir.1989).
>
> . . . . Moreover, with respect to [the defendant's] claim [that] the grand jury transcript supports his contention no evidence was provided to the grand jury establishing an interstate nexus, the Supreme Court has held a defendant is not permitted to challenge an indictment merely on grounds it is unsupported by adequate and competent evidence. *See Costello v. United States*, 350 U.S. 359, 361-64, 76 S. Ct. 406, 100 L.Ed. 397 (1956).

*United States v. Riley*, No. 07-3178, 292 Fed. Appx. 717, *722, 2008 WL 3019438, **4-5 (10th Cir. Aug. 5, 2008) (unpublished), *cert. denied*, 129 S. Ct. 515 (2008).  The *Riley* case also summarized when a court's refusal to quash or dismiss an indictment based upon errors in grand-jury testimony is reversible error.

> Unlike trials before a petit jury, the grand jury process is generally unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.  See Fed. R. Evid. 1101(d)(2); *United States v. Calandra*, 414 U.S. 338, 343, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).  When an alleged error in a grand jury proceeding is implicated, we have said errors should either be characterized as: (1) " 'technical' " or " 'procedural' " affecting only the grand jury's finding of probable cause; or (2) as those "threatening the defendant's 'right to fundamental fairness in the criminal process.' " *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244-45 (10th Cir. 1996) (citations omitted).

> When the alleged error is technical and raised prior to a verdict, the petit jury's subsequent guilty verdict establishes not only probable cause of guilt, but the defendant's guilt beyond a reasonable doubt, so that "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at 1245.  Only when claimed errors went "beyond the question of whether the grand jury had sufficient evidence upon which to return an indictment and essentially threatened the defendant's rights to fundamental fairness," is the indictment open to question, notwithstanding a subsequent guilty verdict by the petit jury. *Id.* (quotation marks and citations omitted).  To make a showing the fundamental fairness of the grand jury proceeding was affected, the defendant must establish the alleged errors "substantially influenced the grand jury's decision to indict, or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) (quotation marks and citation omitted).  Conduct that might transgress such a fundamental right to fairness would include the government's attempt to unfairly sway the jury or pervasive attempts to charge without cause or undermine the defense.  *See Lopez-Gutierrez*, 83 F.3d at 1245.  "Under such circumstances, we review the record to determine whether the prosecutor engaged in flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment." *Id.* (quotation marks and citations omitted).

> In this case, the contested portion of Detective Biggs's testimony to the grand jury involves his statement Mr. Riley possessed the shotgun as a "security measure." Understandably, in the context in which it was made, the grand jury could have attributed the statement about the gun being a "security measure" to Mr. Riley, so

> that it arguably constituted a technical error. However, it is unlikely attribution of the "security measure" statement to Mr. Riley affected the grand jury's finding of probable cause given a defendant's motive for possessing a firearm is not an element of the offense charged. Even if it affected the grand jury's finding of probable cause, the petit jury returned a guilty verdict based on sufficient evidence, as discussed in more detail later, so that "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* As to Mr. Riley's right to fundamental fairness in the indictment process, nothing in the record suggests Detective Biggs or the government intended to unfairly sway the grand jury or otherwise undermine his defense by attributing the security measure statement to Mr. Riley, or that the prosecution was aware of the error or "engaged in flagrant or egregious misconduct which significantly infringed on the grand jury's ability to exercise independent judgment." *Id.*

*Id.* at *725-26, 2008 WL 3019438, **7-8.

In denying Torres-Laranega's request for production of all of the grand-jury transcripts, Judge Schneider did not specifically address Torres-Laranega's claim that Agent Armijo committed perjury. Judge Schneider stated:

> to the extent that Agent Armijo's testimony to the grand jury might have constituted hearsay, the grand jury generally operates "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. Calandra*, 414 U.S. 338, 343 (1977); *accord* Fed. R. Evid. 1101(d)(2)(Federal Rules of Evidence are inapplicable to proceedings before a grand jury). The grand jury may, therefore, consider hearsay and, indeed, hearsay alone. *United States v. Williams*, 504 U.S. 36, 50 (1992); *see also Costello v. United States*, 350 U.S. 359, 361, 363 (1974) (grand jury presentation comprised solely of hearsay evidence provided legally sufficient basis for valid indictment). Accordingly, the Court finds nothing improper in Agent Armijo's testimony, whether at trial or before the grand jury.

I agree that the indictments cannot be dismissed on the basis that Armijo's evidence regarding the chase car was hearsay. Further, however, in regard to the claim of perjury, I note both that Torres-Laranega has misstated Agent Armijo's trial testimony regarding what he told the Grand Jury, and that the transcript of the criminal proceeding itself contains the requested portion of the grand-jury transcript, so Torres-Laranega's request for the transcript is moot.

9

Agent Armijo did not testify that he told the Grand Jury that *he* saw Torres-Laranega in the chase car. Counsel for co-defendant Mendivil used a copy of the grand-jury transcript at the criminal trial in cross-examining Agent Armijo. Counsel quoted Agent Armijo's grand-jury testimony as follows:

> Counsel: And I'm reading to you from page 12 of your [August 19, 2003 grand-jury] testimony: "On May 1[8], as you all know, 2003, we had a seizure at the 1-25 checkpoint just north of Las Cruces. I believe it netted out to be 1471 kilograms of marijuana. That was driven by Martin Mendivil, as well as the tractor trailer." Then you go on to say, "In a chase car following that vehicle that Mendivil was driving, Jorge Torres . . . [was] present in the car, and observed the tractor trailer stopped at the 1-25 checkpoint." That was your testimony in front of the grand jury, wasn't it?
>
> Agent Armijo: Yes, sir, it was.

*United States v. Torres-Laranega,* No. 03cr212 MV, Feb. 11, 2005 Tr. of Proceedings, Vol. XI at 2529. Agent Armijo then admitted that he did not "tell the Grand Jury . . . that it was Edgar who had told that to [the confidential informant]" and who then had told Agent Armijo. *Id.* at 2530. Because the grand-jury transcript demonstrates that Agent Armijo did not testify that *he* saw Torres-Laranega in the chase car, but that he only failed to inform the Grand Jury that the information he gave them was based on double hearsay, there is no issue of perjury and the alleged error is only a "technical" one. Therefore, Torres-Laranega's guilty verdict, which was not based on his alleged presence in a chase car on May 18, 2003[2], establishes both probable cause and his guilt beyond a reasonable

---

[2] As Torres-Laranega pointed out, no one at trial testified that he was in the chase car on May 18, 2003. But the Tenth Circuit found the evidence of his involvement in the May 2003 drug conspiracy to be as follows:

> On May 18, 2003, Ms. Alarcon informed Agent Andrew Armijo of the FBI that one of Mr. Torres-Laranega's henchmen, Edgar Lopez-Hernandez, asked her to move a partially "loaded" purple tractor trailer for himself and Mr. Torres-Laranega. *Id*. at 156, 722-28. Specifically, Ms. Alarcon was to move the truck around Las Cruces (from a truck stop to an auto repair shop and then back

doubt, making "any error in the grand jury proceeding connected with the charging decision [] harmless beyond a reasonable doubt." *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996). As a matter of law, Torres-Laranega cannot show "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," FED. R. CRIM. P. 6(e)(3)(E)(ii), based on Agent Armijo's testimony, and his request for further production of the grand-jury transcripts was properly denied[3].

For his second claim of error, Torres-Laranega contends that the person who translated the wiretaps was not certified by the Court to translate them, and that, if he is given a copy of the original spanish transcripts, he can show that "in none of the phone calls . . . [did he] order[] or mention[] any drug delivery or trade in the state of New Mexico or that he was involved in Mr. M. Mendivil's arrest by look[ing] for an attorney to defend Mr. M. Mendivil in the court." Doc. 17 at 12. He contends that his counsel was ineffective by failing to obtain these transcripts and make this argument. It is apparent that no spanish "transcripts" exist and that there are only tapes of the

---

        to the truck stop) in order to complete the truck's load of marijuana before its shipment North. *Id*. at 724-28. At the repair shop, agents observed the rear cargo doors of the trailer open and individuals working around the vehicle. *Id*. at 2363, 2372. Shortly thereafter, another participant in the enterprise, Martin Mendivil, proceeded to take the tractor trailer northbound toward Chicago. At a permanent U.S. Border Patrol checkpoint on Interstate 25, approximately 20 miles north of Las Cruces, the trailer was searched and 1,417 kilograms of marijuana were seized. *Id*. at 167, 239. Mr. Torres-Laranega subsequently paid for an attorney to represent Mr. Mendivil in connection with charges arising from the seizure. Ex. 296 at 3-4.

*United States v. Torres-Laranega*, 476 F.3d at 1151.

   [3] In his Appeal, Torres-Laranega now contends that he was, in fact, seeking only the transcripts of all of Agent Armijo's and the confidential informant's testimony instead of the broad request of all grand-jury transcripts. Doc. 32 at 5. He has shown no potential ground for dismissing the indictment on the basis of any other grand-jury testimony, however.

spanish conversations that have been transferred to CDs.

Judge Schneider correctly held that "it was not necessary for the government to establish defendant's presence at the May 2003 drug seizure in order to prove the conspiracy or establish that New Mexico was a proper venue for trial," and noted that "[a]mple trial evidence implicated defendant in acts undertaken in New Mexico in furtherance of the conspiracy and the continuing criminal enterprise." Doc. 31 at 3. On appeal, Torres-Laranega criticizes Judge Schneider's failure to "offer a single example" of evidence to connect him with "acts taken in New Mexico in furtherance of the conspiracy." Doc. 32 at 12. But the Court need look no further than the Tenth Circuit's opinion affirming Torres-Laranega's conviction, cited, *supra*, for multiple examples of the extensive evidence supporting the jury's verdict finding that Torres-Laranega was the king-pin of an illegal drug enterprise that distributed vast quantities of marijuana stashed in New Mexico locations and driven throughout and seized in New Mexico, using New Mexican drug couriers. For additional examples of evidence presented at his criminal trial that establishes Torres-Laranega's New Mexican involvement apart from the wiretaps and Agent Armijo's testimony about the chase car, I direct Torres-Laranega to the opinion affirming co-defendant Diaz's conviction in *United States v. Diaz*, 213 Fed. Appx. 647, 2007 WL 10752 (10th Cir. 2007).

Further, I note that Marcia Milner, Torres-Laranega's trial counsel, swore that the reason his case was designated as "complex" was because she needed time to go through the thousands of pages of exhibits and the many "CDs of actual taped conversations between" Torres-Laranega and the confidential informant. Doc. 10, Ex. 1 at 4. It appears, therefore, that Milner competently obtained the original spanish tapes and Torres-Laranega may obtain those CDs from her. It cannot be contrary to law, therefore, to refuse to require the government to again produce those CDs to

Torres-Laranega. For these reasons, I will affirm the Order denying discovery.

### C. The United States shall serve Torres-Laranega using certified mail.

I note that Torres-Laranega has repeatedly complained that he sometimes is not receiving documents that the Court or the United States has mailed to him unless they are sent by certified mail. *See, e.g.* Doc. 18; Doc. 22 at 2; Doc. 25 (requesting the Court to order the prison where he is incarcerated to follow the published mail procedures because he still is not receiving documents from the Court or the United States); Doc. 30 at 2-3 n.1, n.2 (stating that his uncertified mail in this case has been delayed an average of 32 days and that the Court's May 21, 2009 Order still had not been delivered to him on July 14, 2009); Doc. 36 (filed September 25, 2009, and stating that he still had not received the May 21 Order and requesting the Court to require the United States to serve the Order via certified mail). The United States responds that it has mailed its filings to him and that this Court "lacks jurisdiction [in this proceeding] to order" the prison to deliver the mail to him. Doc. 27 at 1. The delay in Torres-Laranega receiving his legal mail in this case is serious and unsettling. I conclude that the United States shall henceforth mail all of the documents it is required to serve on Torres-Laranega, as well as all Orders or other documents filed by the Court in this case to Torres-Laranega by certified mail, return receipt requested.

### D.      Torres-Laranega's counsel shall turn his criminal-trial file over to him.

Finally, Torres-Laranega seeks to have his former Counsel Milner send to him the grand-jury minutes and Rule 16 disclosures she obtained during his criminal trial. The United States argues that his request should be denied because he has "not established good cause" for discovery. Doc. 40 at 2. A litigant does not have to show good cause for discovery in order to obtain his own litigation file from his former attorney - the discovery has already been obtained. Ms. Milner shall

13

send Torres-Laranega's criminal file to him, including the CDs of the spanish wiretaps that she obtained, at his expense. If she no longer has the file because she may have turned everything over to Scott Davidson, who represented Torres-Laranega on appeal, Mr. Davidson shall send the file to Torres-Laranega. Counsel shall request a delivery confirmation and file a status report with the Court that lists the contents of the file when it is sent to Torres-Laranega. Torres-Laranega shall reply to the United State's answer within thirty days after delivery of the file.

**IT IS ORDERED** that the Government's motion to dismiss (Doc. 35) is DENIED; that Torres-Laranega's appeal (Doc. 32) is DENIED; that Torres-Laranega's letter/motion requesting his case file (Doc. 39) is GRANTED; and his motions for an extension of time in which to reply to the United States' answer to his § 2255 motion until after he receives his file (Docs. 33, 42) are GRANTED as provided in this Order.

**IT IS FURTHER ORDERED** that the United States shall henceforth mail all of the documents it is required to serve on Torres-Laranega, as well as all Orders or other documents filed by this Court in this case to Torres-Laranega by certified mail, return receipt requested; and

**IT IS FURTHER ORDERED** that former counsel Marcia Milner and/or Scott Davidson shall send Torres-Laranega's criminal file to him, including any CDs of the spanish wiretaps that Milner obtained, at Torres-Laranega's expense as directed above, and file a status report with the Court as directed above, and that the Clerk of the Court shall mail a copy of this Order to Ms. Milner and to Mr. Davidson.

**DATED** this 20th day of May, 2010.

_____
**MARTHA VÁZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

*Attorney for Petitioner*:

Jorge Torres-Laranega, pro se
Reg. No. 09645-265,
FCI Fort Dix, West Unit 5812,
P.O. Box 2000
Fort Dix, NJ 08640

Former Counsel:

Marcia Milner
P.O. Box 1450
Las Cruces, NM 88004

Scott Davidson
1011 Lomas Boulevard NW
Albuquerque, NM 87102

*Attorneys for Respondent*:

Gregory J. Fouratt
United States Attorney
Richard C. Williams
Assistant U.S. Attorney
555 S. Telshor, Suite 300
Las Cruces, NM 88011