IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

**Plaintiff,**

No. CV 08-889 MV/WDS

**vs.**

CR 03-2112 MV

**JORGE TORRES-LARANEGA,**

**Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Defendant Jorge Torres Laranega's ("Defendant") Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion")(Document 1), and the United States of America's Response. (Document 14). Also before the Court is Defendant's Motion to Supplement an Additional Issue and Request to Dismiss the Five Issues Raised in Original §2255 Motion, (Document 53) which the Court construes liberally as a motion to amend the original Motion under 28 U.S.C. §2255. Having reviewed all motions and responses, the record, and the law, this Court recommends that Petitioner's Motion be denied. Because the issues are resolved on the pleadings and the record establishes conclusively that Petitioner is not entitled to relief, an evidentiary hearing is not necessary. 28 U.S.C. §2255; *Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000).

**FACTUAL AND PROCEDURAL HISTORY**

The underlying criminal prosecution charged Defendant with leading a criminal organization

that transported multi-ton quantities of marijuana from Juarez, Mexico; El Paso, Texas; and Las Cruces, New Mexico to the Chicago, Illinois area using tractor trailers. The investigation began when one of the co-conspirators was recruited as an informant. The informant provided the other conspirators, including Defendant, with cell phones that had been wiretapped by investigators, allowing the investigators to listen in on conversations in which Defendant gave instructions to his co-conspirators. For example, Defendant was overheard directing the staging and loading of the trucks, and the concealment of the drugs inside the trucks. Investigators followed Defendant as he escorted a truckload of narcotics from Texas to Chicago. Investigators made four major marijuana seizures during the eight-month investigation.

On August 19, 2004, a federal grand jury in the District of New Mexico returned a three-count indictment charging Defendant with (1) engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a); (2) conspiracy to possess with intent to distribute a controlled substance within 1,000 feet of a school and 1,000 feet of a truck stop in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), 860, and 849(a); and (3) possession with intent to distribute 1,000 kilograms and more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 281. Defendant was one of 12 individuals charged.

Defendant and three co-defendants proceeded to trial. The jury found Defendant guilty of all counts. Defendant's sentencing was on August 10, 2005. On that date, the United States Attorney moved to dismiss without prejudice Count 2 of the indictment, on the basis that Count 2, conspiracy to possess with intent to distribute, was a lesser included offense of Count 1, continuing criminal enterprise. Subsequently, the district court sentenced Defendant to concurrent terms of 240 months of imprisonment on Count 1, continuing criminal enterprise, and Count 3, possession with intent to distribute. On February 21, 2007, the Tenth Circuit affirmed the district court's judgment.

*United States v. Torres-Laranega*, 476 F.3d 1148 (10th Cir.), *cert. denied*, 128 S.Ct. 176 (2007). On October 1, 2007, Torres's petition for certiorari was denied. This Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 U.S.C. § 2255 followed.

## CLAIMS

The Court reads Defendant's *pro se* Motion liberally, *see Price v. Philpot,* 420 F.3d 1158, 1162 (10th Cir. 2005). Defendant's original motion alleges that his defense counsel was ineffective for the following five reasons: (1) failing to introduce evidence at trial that property that the United States used to prove Torres "obtain[ed] substantial income or resources" from a continuing series of federal drug law violations was not owned by Torres; (2) refusing to prepare and to allow Torres to testify on his own behalf at his trial; (3) failing to challenge venue in New Mexico; (4) failing to move for a mistrial or dismissal when FBI Special Agent Andrew Armijo allegedly testified that he had "lied" to the grand jury; and (5) failing to move for dismissal of the superseding indictments because they were filed "outside of the Speedy Trial Act's time limitations."

In Defendant's Motion to Amend he asserts that the government's failure to dismiss Count 3 of the indictment constituted a double jeopardy violation because Count 3 was also a lesser included offense of Count 1 of the indictment.

## STANDARD OF REVIEW

Since Defendant is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies. A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Defendant's claims of ineffective assistance of counsel and violation of the double

3

jeopardy clause, if proved, would constitute a denial or infringement of his constitutional rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's allegations are correctly styled as an ineffective assistance of counsel claim. The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In *Strickland*, 466 U.S. at 686-87, the Supreme Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. In order to establish an ineffective assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000). To establish deficient performance, Defendant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687; and that his legal "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374, 393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993). It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g. Scoggin v. Kaiser*, 186 F.3d

1203, 1207 (10th Cir. 1999).

## ANALYSIS

**Claim One: Ineffective Assistance of Counsel Regarding Proof That Defendant Obtained "Substantial Income or Resources" From a Continuing Criminal Enterprise.**

Defendant argues that his trial counsel was ineffective because she failed to introduce evidence to rebut the evidence offered by the United States to prove that Defendant "obtain[ed] substantial income or resources" from the drug smuggling enterprise.  Specifically, Defendant argues that counsel was ineffective in disregarding his instructions to: (1) subpoena the actual owners of the property[1]; and (2) introduce evidence that "the Social Security number issued on October 8, 1989" belonged to Torres's son, not Torres. Torres further argues that had these facts been presented, he would have been acquitted of Count 1.

Defendant's argument is not well taken.  First, the Court notes the affidavit provided by Marcia Milner Esq., Defendant's defense counsel, and attached to Plaintiff's Response brief. According to Ms. Milner, she discussed with Defendant the fact that prosecutors had evidence that the Roseway house had been purchased by Defendant through third parties.  Ms. Milner states that she advised Defendant of the risks of calling the third parties as witnesses, and that they would be exposing themselves to charges of perjury.  Ms. Milner denies that Defendant instructed her to call the witnesses.  Even more persuasive to the Court, however, is the analysis of the matter by the

---

[1] Defendant appears to be referring to real property, and in its response the Plaintiff suggests he is referring to the "Roseway residence."  Defendant also owned property in Juarez, Mexico.  For the reasons stated in the Report and Recommendations it is not necessary for the Court to identify the particular real property that Defendant is referring to.

5

Tenth Circuit in Defendant's direct appeal:

> For example, the jury received evidence of four separate inchoate transactions in which the government seized almost 5,000 kilograms worth of marijuana from Mr. Torres-Laranega's enterprise. Evidence was also presented to the jury that, pursuant to the conspiracy charged as part of the continuing criminal enterprise, Mr. Torres-Laranega acquired for distribution vast quantities of marijuana through drug couriers traveling into the United States from Mexico. . . .
>
> The jury also received evidence of at least three successful drug runs made by the enterprise during the course of the conspiracy alleged as part of the continuing series of violations. Twice Ms. Alarcon [the confidential source ("CS")] observed large quantities of marijuana depart from Las Cruces bound for Chicago. There was also evidence that in early July of 2003, [co-defendant] Mr. Barraza and his brother successfully delivered a load of marijuana in a commercial tractor trailer to Chicago on behalf of Mr. Torres-Laranega. . . . In addition, Ms. Alarcon [the CS] testified that the going rate for driving tractor trailers full of marijuana for Mr. Torres-Laranega during the course of the conspiracy was $13,000-$20,000 per delivery. Mr. Torres-Laranega did in fact pay Ms. Alarcon, Mr. Mendivil, Mr. Barraza and others, thousands of dollars for driving trucks and related transportation expenses. Mr. Torres-Laranega further promised bonuses of $20,000 to [co-defendant] Mr. Fernandez and another co-conspirator if the police did not seize a tractor trailer full of marijuana. Still further evidence suggested that Mr. Torres-Laranega owned at least two tractor trailers involved in the trafficking. And, of course, Mr. Torres-Laranega paid for the legal bills of [co-defendant] Mr. Mendivil when he was arrested while transporting marijuana, as well as the costs associated with efforts to retrieve seized tractor trailers from law enforcement authorities. . . .
>
> Finally, neither Mr. Torres-Laranega nor his wife filed any tax returns for the years 2001, 2002 or 2003. Yet, Mr. Torres-Laranega owned two homes, one with an indoor swimming pool, and various luxury vehicles. Given the volume of drugs under his control, the evidence of prior successful runs, the assets he possessed, the money he expended in aid of the enterprise, and the lack of evidence of Mr. Torres-Laranega having any legitimate job, the jury very reasonably could have inferred that trafficking drugs was his full time, and rather lucrative, occupation during the period of time encompassed by the conspiracy charged in the indictment. This too suffices to support the jury's verdict under Section (c)(2)(B) [*i.e.*, that Torres obtained "substantial income or resources" from the alleged narcotics trafficking conspiracy].

*Torres-Laranega*, 476 F.3d at 1159-60 (internal citations and quotations omitted).

Given the litany of evidence above, there is no reasonable probability that testimony, perjured or otherwise, from the purported actual owners of the Roseway residence would have

resulted in Defendant's acquittal on Count 1.  The Court's conclusion is the same regarding testimony that the Social Security number issued on October 8, 1989 belonged to Defendant's son, not Defendant.  The Court notes Ms. Milner's recollection that she did introduce the evidence during trial, during cross examination of a government witness.  However, even if the evidence was not introduced it is, in the Court's opinion, a trivial matter in view of the overwhelming evidence introduced against Defendant, and does not rise to the level of prejudice necessary under the *Strickland* standard.  The Court recommends that Defendant's petition for habeas corpus on this ground be denied.

**Claims Two, Three and Four: Counsel's Failure to Allow Defendant to Testify at Trial; Counsel's Failure to Challenge Venue in New Mexico; and Counsel's Failure to Move for a Mistrial When FBI Agent Armijo Testified That He Lied to the Grand Jury.**

The Court has opted to address these claims together because they all arise out of Defendant's misperception of the law.  Defendant was tried and convicted in federal court in New Mexico.  The criminal enterprise run by Defendant operated at least in Mexico, Texas, New Mexico, and Illinois, plus the states driven through to get the drugs to Chicago.  Defendant claims never to have set foot in New Mexico, and for the purpose of addressing these claims, the Court accepts Defendant's representation as true.  Defendant appears to believe that if *he* never entered New Mexico, he could not be prosecuted in New Mexico for operating a continuing criminal enterprise or conspiracy that operated in New Mexico.

Venue, however, is proper wherever acts in furtherance of the conspiracy occur.  *See United States v. Magleby*, 420 F.3d 1136, 1145 (10th Cir. 2005); *United States v. Kelly*, 535 F.3d 1229, 1232-33 (10th Cir. 2008).  There was substantial evidence that Defendant instructed his co-conspirators to load trucks with drugs in and around the Las Cruces, New Mexico area, and one of the drug seizures took place north of Las Cruces on I-25 in New Mexico.  In the Court's opinion a

challenge to venue would have been frivolous, and failure to raise a meritless argument does not constitute ineffective assistance of counsel. *Martin v. Kaiser*, 907 F.2d 931, 935 (10th Cir. 1990); *Beachum v. Tansy*, 903 F.2d 1321, 1330 (10th Cir. 1990)(recognizing that counsel is not ineffective for choosing not to argue a futile position).

Defendant alleges that he should have been called to the stand to testify that he was hospitalized in Juarez, Mexico on the day of the I-25 drug seizure, and alleges that this testimony–bolstered by medical records and admission files-- would have "automatically defeat(ed)" the charges in the indictment. Defendant also argues that had he been allowed to testify he would have told the jury of his first hand knowledge of how hard it was to transport illegal drugs through New Mexico. Defendant also argues that he would have told the jury that he made a specific decision to transport drugs to Chicago through Texas because Texas did not have the same barriers to such shipments, compared to New Mexico.

Defendant's argument is not well taken. Even if he was in the hospital in Juarez, Mexico at the time of the drug seizure on I-25, and even if he personally never set foot in New Mexico, there was overwhelming evidence that his criminal enterprise operated in New Mexico. Therefore, venue was proper in New Mexico and there was nothing improper in his being tried in that state, and nothing improper in the actions of his defense attorney. Nor was Defendant's case prejudiced by the fact that he did offer the testimony that he claims he wanted to.

Finally, Defendant claims that his defense attorney should have moved for a mistrial after FBI Agent Armijo testified that he "lied" during his grand jury testimony. The Court has reviewed the grand jury testimony and the trial testimony and has found no evidence that Agent Armijo lied to the grand jury. When Agent Armijo appeared before the grand jury and testified about the drug seizure on I-25 he said that Defendant was nearby in a chase car and observed the seizure. Agent

Armijo did not testify that he personally saw Defendant, nor did he tell the grand jury the source of the information that Defendant was nearby. In fact, Agent Armijo was told by the confidential informant that Defendant observed the seizure, and she in turn was told that by a third person. The fact that Agent Armijo's testimony was hearsay is of no consequence, since a grand jury may consider hearsay and, indeed, hearsay alone. *United States v. Williams*, 504 U.S. 36, 50 (1992); *see also Costello v. United States*, 350 U.S. 359, 361, 363 (1974) (grand jury presentation comprised solely of hearsay evidence provided legally sufficient basis for valid indictment).

At trial, Agent Armijo admitted during cross examination that he had not seen Defendant during the course of the I-25 drug seizure, that no other agent had seen him, and that the confidential informant had told him that she had been told Defendant was nearby. From the context of the testimony, it appears to the Court that the purpose of the cross examination was not to attack Agent Armijo's credibility, but to attack the credibility of the confidential informant. Defendant's concern over the testimony appears to be, again, that it places him in New Mexico. In any event, it is abundantly clear to the Court that Agent Armijo did not lie at any time and that there was no basis for moving for a mistrial on this issue. A claim for ineffective assistance of counsel cannot be based on failure to move for a mistrial that would not have been granted. Accordingly, the Court recommends that Defendant's petition for habeas corpus on these grounds be denied.

**Claim Five: Ineffective Assistance of Counsel Regarding Violation of Right to Speedy Trial**

Defendant alleges that his counsel was ineffective for failing to get the indictments dismissed for violation of the Speedy Trial Act. Defendant did not raise the issue of the timeliness of his trial on direct appeal, accordingly the Court considers this claim only in the guise of a claim of ineffective assistance of counsel. *United States v. Eaton*, 20 F. App'x 763, 771 (10th Cir. 2001). To establish deficient performance by defense counsel, Defendant must show that his attorney made

9

"errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687. Defendant has not presented evidence that there was, in fact, a violation of the Speedy Trial Act, has not presented evidence that he asked his attorney to move his case to trial more quickly, and has not presented evidence that he would have benefitted from having his attorney do so. This was a complex prosecution involving fourteen co-defendants. As noted by Plaintiff, even if the Speedy Trial Act was violated, there is no reason to believe that the charges would have been dismissed with prejudice, particularly when Defendant never objected to the trial settings. The Court does not perceive any deficient performance by defense counsel in connection with this claim, nor can the Court identify prejudice to Defendant. Accordingly, the Court recommends that Defendant's petition for habeas corpus on this ground be denied.

**Defendant's Motion to Amend the Petition to Assert a Violation of the Double Jeopardy Clause**

On September 27, 2010 Defendant filed a Motion to Supplement an Additional Issue to His §2255 Motion. (Document 53) Defendant seeks leave to add a claim that his conviction under Count 1 of the indictment (continuing criminal enterprise) and Count 3 of the indictment (possession with intent to distribute) is a violation of the double jeopardy clause because Count 3 is a lesser included offense of Count 1. Plaintiff relies on *Rutledge v. United States*, 517 U.S. 292 (1996) to support his claim. In addition to seeking leave to amend his complaint, Defendant volunteered to dismiss the five original claims in his §2255 Motion, suggesting that they were rendered moot by the supplemental claim of double jeopardy[2].

---

[2] In a subsequent response filed March 8, 2011 (Document 60) Defendant appears to be asking the Court to consider his motion to amend first, before dismissing his original five claims. The Court has elected to address the merits of all claims raised by Defendant in this Report and

Plaintiff opposes amendment of the §2255 Motion, and objects to the proposed new claim because it was not asserted within the one-year period of limitation, does not relate to the five ineffective assistance of counsel claims Defendant previously asserted, and a second or successive motion has not been certified by the court of appeals. 28 U.S.C. § 2255(f), (h). *See also United State v. Espinoza-Saenz*, 235 F.3d 501, 503 (10th Cir. 2000) (untimely amendment relates back only if it does not seek to add a new claim or to insert a new theory into the case); *see also Douglas v. Workman*, 560 F.3d 1156, 1189 (10th Cir. 2009) (§ 2254 claim viewed as supplemental rather than successive claim because it related to same assertion as original claim).

Plaintiff also objects on the basis that the proposed new claim is procedurally defaulted because it involves a legal argument that could have been brought by direct appeal. A proceeding under 28 U.S.C. § 2255 is not an opportunity to bring legal arguments that should have been brought by direct appeal. *See United States v. Torres-Laranega,* 476 F.3d 1148 (10th Cir. 2007). The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). Thus, when a defendant "fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

The "cause" standard requires a defendant to show that some external objective factor — such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel — prevented him from raising the issue on appeal. *See Murray v. Carrier*, 477

---

Recommendation.

11

U.S. 478, 488 (1986); *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). The fundamental miscarriage of justice exception allows a defendant to obtain review of his defaulted claims by showing actual innocence. *See Herrera v. Collins*, 506 U.S. 390, 403-04 (1993).

The Court agrees with Plaintiff that Defendant has not alleged, let alone established, cause that would excuse his failure to raise the proposed new claim on direct appeal. While he alleges that he only recently received his legal file, he was represented by counsel in his direct appeal of his conviction and had all of his file, and counsel, at that time. Nor has he alleged or shown that a fundamental miscarriage of justice will occur if the claim is not considered. To the contrary, Defendant's proposed supplemental argument is simply incorrect. Defendant argues that Count 3 of the indictment should have been dismissed, along with Count 2, because Count 3, possession with intent to distribute, is a lesser included offense for Count 1, continuing criminal enterprise. This is not the case. *See, United States v. Stallings*, 810 F.3d 973, 977 (10th Cir. 1987) (conviction of continuing criminal enterprise and underlying predicate offense does not violate double jeopardy clause). Defendant cites *Rutledge v. U.S.*, 517 U.S. 292 (1996) to support his proposed amended claim, but that case only held that conviction for both continuing criminal enterprise and conspiracy to possess with intent to distribute constituted a double jeopardy violation. It was pursuant to the *Rutledge* holding that the United States Attorney dismissed Count 2 of the indictment before Defendant's sentencing.

Accordingly, this claim is both untimely and procedurally barred, and the Court recommends that Defendant's Motion to Supplement his §2255 Motion be denied.

## RECOMMENDED DISPOSITION

For the foregoing reasons, this Court recommends that Defendant's Motion to Amend his Motion Pursuant to §2255 (Document 53) be denied. The Court further recommends that

Defendant's Motion pursuant to 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Document 1) be denied on the merits and dismissed with prejudice.

## NOTIFICATION

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**W. DANIEL SCHNEIDER
United States Magistrate Judge**